Good morning, Your Honor, and may it please the Court. I'm Jose Nieto Domingo on behalf of Appellant Hilton Cordero-Rosario. I would like to reserve two minutes for rebuttal. Certainly. Your Honor, the record in this case is very clear. No reasonable view of the evidence can support the District Court's decision to deny the motion to suppress. Appellant was convicted and indicted by federal authorities on the evidence obtained through not one but two searches of his apartment and a computer and then subsequently the federal authorities conducted yet another search. Admittedly, on the basis of the first search conducted by the Puerto Rico authorities. Please keep in mind that the federal authorities were not conducting an independent investigation of Appellant. They came into the picture only after the initial intervention of the Puerto That initial intervention, that search was conducted pursuant to two separate warrants issued by a state judge on the basis of two affidavits filed by the same state agent, Agent Ramos-Ortiz. You have official translations of those affidavits. They're the same affidavits that the issuing judge examined and they're the same affidavits that Judge L. P., District Judge L. P. examined when he considered the motion to suppress. They're included of course in the addendum and in the appendix. I am sure that you have seen these affidavits by now but I am very respectfully going to request that you review them again and I am also going to ask you that you ask the government where in those affidavits can one find a description that could lead anyone to conclude that there was pornographic material in a computer. The council, the government makes the argument. They don't really try to defend the affidavit or the search warrant on the premise that the authorities were searching for child pornography. Their theory is that there had been an interview with a minor who had been allegedly the victim of some kind of sexual misconduct and they were pursuing an investigation of evidence relating to that form of sexual misconduct and she had reported to them that there was pornography found in this apartment and I guess the affidavit does not then draw the link but the government draws the link and I guess they're arguing that it's a fair inference that the pornography is in some way related to the victimization of this minor. That's how they defend. I understand your honor but if you review the affidavit that's not what the affidavit says. The affidavit does not even say contrary to what the government states in their brief it doesn't even say that the minor told agent Ramos Ortiz that there was pornography. I invite you to go back to the affidavit. It doesn't say that. All it says is that in that apartment there is one computer that has pornographic material. The issue is not even that there was not child pornography. It's that no one can on the basis of that affidavit conclude that there were pornographic materials at all. Generic pornography, not child pornography. Generic pornographic or rather than pornographic which is not a defined term obscene materials and under Puerto Rico law which is what this officer was supposed to know it is impossible for a court to issue a warrant because there is pornography or obscene material in a computer because that is not a crime. Could you explain what your take on the preamble to the statement where he says that there is pornographic material on the computer and let's say you're right if all the affidavit says I think there's pornographic material give me a warrant that would not be enough. But that's not literally what he says. Instead what he says is I understand and conclude from the investigation carried out by me in this case. If he had just said that there is pornography I take it you would say that's still not enough because that's just general language that I'm doing an investigation and think there is. But then he goes on to say I understand and conclude from the investigation carried out by me and in accordance with the interview of the injured party. So as you say it does not say that the injured party said there is pornography. So that phrase and in accordance with the interview of the injured party. How do you read that phrase or what are we supposed to make of that for We don't know. We have no idea. We have no way, not we, the important thing is the issuing judge had no idea of knowing what if anything the minor told agent Ramos Ortiz. He didn't say the minor told me and that is an assertion that is made repeatedly in the government's brief and it is not true. You just have to go to the affidavit. It is not true. The only way that the government has tried to bolster that argument is by including reference to the presentence report which of course was not something that was before any of the issuing judges or before Judge Helpe. The fact of the matter is we have no idea what if anything that minor told the agent. How is a reviewing court supposed to read an affidavit like this? I mean are we supposed to apply common sense, a practical judgment about what perhaps is really going on here? I mean we are not supposed to finally parse the language in order to assess whether probable cause is set forth in the affidavit are we? Well Judge Lupez, Judge Coffin some time ago in the Brunette case which is the controlling precedent provided a precise framework of exactly, exactly what is the inquiry that we are supposed to conduct. The court is supposed to check if the affidavit contains sufficient indicia of images that presumably fall within the category of child pornography. Mind you in this case the agent was not investigating child pornography but he was investigating youth acts. The affidavit doesn't say because pornography or obscene material is not generally a crime that a parent was using those materials in order to entice the minor. That would be relevant but that's not what the affidavit says. We're not, as a reviewing court we're not entitled to see that as a sort of fair inference? No, not at all. That the reviewing court, that the court with the obligation to issue a warrant, could that court take, see that as a fair inference? Well Judge Lupez the first thing is no court is supposed to issue a warrant. The court is supposed to issue a warrant if there is probable cause. Sure. So in Brunette Judge Coffin stated very precisely that the judge has to have received sufficient information in that affidavit to make the determination that there is pornographic material there. That's why this case, this Brunette case has been referred to in subsequent cases as the attach or describe rule. You either have to describe the material or attach it so the court, both you and the issuing judge and the judge presiding over the, that is supposed to entertain the motion to suppress, that judge is supposed to be able to say, ah, there is material here that is pornographic. How do I know it? Because there is a description. Can you imagine if it was permissible to allow the search of a computer because there is obscene materials. Every computer, everywhere could be searched. Because under Puerto Rico law and under the laws of many states, that is not a crime. And it is very clear under the presence of this circuit that in order to allow that search, the judge has to be satisfied that that material was used in a way that was criminal. I use the example in the brief that, for example, giving alcoholic beverage to a minor in itself may be a crime. But the possession of alcoholic beverage is not. So in order to get a search warrant for that, you could not merely say, ah, I'm going to issue a warrant because in your house, for example, there is alcoholic beverage. That would be clearly insufficient. Just so I get the argument, if it said, I understand, if he says to the judge, I'm from a friend of the person I'm investigating, not from a friend, that he has pornographic material on his computer, you'd say that would not be enough for probable cause because that would just show he's got pornographic material. It wouldn't show anything about the use of that material in relation to the crime. Well, yes, but in this case it's worse because there's no allegation that the obscene material, which, by the way, there's an anterior issue. There's no way for anybody to conclude that the material was, in fact, obscene. There's no way that they could do that. Just by saying that, and Brunette specifically states, and this is cited in page 32 of my brief, bear assertions absent descriptive support. Counsel, you're way over your time. Would you please just answer Judge Barron's question? I am, Your Honor. If you don't have a direct answer, will you reserve some time for rebuttal? I did, yes. Okay. We'll hear from the government then. Good morning, Your Honors. May it please the Court. My name is Marshall Morgan, and I'm appreciate it very much. Your Honors, the reference to the Brunette case is, I submit to you, a red herring in this case. We are not dealing with an investigation looking for child pornography. The child pornography came later on. I think, Judge Lopez, you were correct in pointing out that this investigation, at least stateside, started with a very general allegation of sex crimes committed against the minor, lewd acts. Lewd acts is anything that is not otherwise a sexual assault that is intended to excite the passions of the person, of the defendant, of the target. Basically, a dumping ground for anything that could be a sexual crime that is not otherwise penetration. And that's what they were looking for. That's what the local authorities were looking for at the time that the first search warrant was sworn and authorized. But, Counsel, the problem is, it seems to me, that you have sort of the coincidence of a reference to a minor and the reference to, it doesn't even say that she says, does it, that there is a computer with pornography in there? Well, I mean, I think that's a reasonable, a very reasonable inference. It says, based on the interview of the injured party, PCM. No, it does not say that. It absolutely does not say that. It says, in accordance with the interview, which is very different than saying on the basis of the interview, because here's what could happen. I had an interview with her, and I think that some lewd act occurred. I bet he's got pornography on his computer. I'd like to see it. Suppose the affidavit said that. Would that be enough? Well, I bet there is. It creates more of a disconnect between... Well, just that example. Here's what my affidavit said. I had an interview with her. She says lewd act occurs. I bet there's pornography there. Do you get a warrant for that? It's more suspect, certainly. So, just literally read, if we say this is okay, there's no way to know that that's not what happened. True. And I'm not here to argue that this is the perfect example of a well-drafted affidavit. And I think that Judge Halperin even recognizes that in his order, and say the fact that the application for a search warrant is not drafted as elaborately as an FBI application does not do away with probable cause. It's not the best drafted affidavit for sure. But when you take it and you compare it to even the example of the one presented by the appellant with the alcohol, if there's an investigation of corruption of a minor because they're giving them alcohol, it's perfectly relevant to look in a house to see if there is the alcohol in the house that could even be given. In addition, the fact that pornography in and of itself is not a crime to possess doesn't invalidate on its face this affidavit. Okay. So if we take your point that the magistrate could reasonably infer that the minor is the source of the information that the officer then expressed to the magistrate, that there's cause to believe that there's a computer in the house with pornography on it, where does that get you? What else can the magistrate infer from that? Well, in one who deals with these cases almost exclusively, the fact that there is pornography and it's linked to allegations of lewd acts, it's often used as a grooming tool. The fact that it's not illegal in and of itself doesn't invalidate this. If the minor had said that there's evidence found or evidence could be found in the house on a red cell phone, it would be appropriate to issue a search warrant looking for a red cell phone even though a red cell phone or possession of a red cell phone in and of itself is not illegal. That's why I'm submitting that the fact that we're looking for pornography and it's not illegal in and of itself is really a red herring. It seems to me that what you're presupposing is that the magistrate knows or can infer that the pornography is important to the investigation in some way, and that's not apparent from the affidavit. That seems to be a post-hoc rationale that the government provides. And so what I'm asking is, how can I feel confident that a magistrate would have inferred that, that that's the common inference that would be true? Judge Howard, it's an astute point, and it's not one that I can dispute. But I do submit to your honors that the mere fact that we are engaging in this conversation necessarily means that even if you were to invalidate on a de novo review the search warrant, that the agents acted with good faith under United States v. Leon based on this particular affidavit. If so, I mean, we can go to Leon, and I think we should talk about that, but I want to make sure we're done with the substance first. Are you conceding it? I'm not conceding it. So what's the argument? How can I be confident that the magistrate, that it was a normal common sense inference for the magistrate to make, the one that the government later argues? There is a point that I want, and I'm going to try and answer your question. The challenge to the search warrant is based solely on the four corners of the affidavit. When we look at the four corners of the affidavit, we also need to point out that in the search warrant itself, the judge recognizes that it was being issued after having been, I guess the translation here is examined by me, after the agent was examined slash interviewed by that person. Yeah, but you don't argue that in your briefs. I guess I won't hold that against you for purposes of discussion. Usually, is that boilerplate? Do you know, have you seen a lot of Puerto Rico State? I haven't seen enough that I would feel comfortable representing. To me, it looks like it's boilerplate. You know, the typeface is a little different. There's the gaps, but be that as it may. So if we assume that there was that examination, I guess I would have expected to have seen some margin notes that beef up the affidavit. That's what you usually see. We don't have any of that here. No, and we don't, and I suspect that we don't have it because this is the translation that we're looking at. What was submitted to Your Honors is not the actual Spanish language affidavit or search warrant, even though it has the seal here, which is often done by our translators to give the impression that it's the truth. If the suggestion is that there's more to the affidavit or there are margin notes in the warrant, who would bear the burden of getting that into the record for purposes of this appellate argument? I suppose that the appellant would have had to do a legitimate translation, and of course the United States would have had to have objected at the time. That's why I'm not coming before you in submitting that perhaps there's a margin note. Are you, you're not asking us to infer that somehow the probable cause argument is strengthened because the magistrate in some, in a matter that's not described, sort of learned something from the actual examination of the affidavit? You're not urging us to infer that there is something more unspoken that supports probable cause, are you? It's worth mentioning. Why? I think it's only worth mentioning, respectfully, if you're asking us to draw some support for the probable cause assertion from that unexplained examination. It strikes me as a very curious argument. I suppose initially that was my purpose. What is to be gleaned from that, I can't tell you. So we'll stick with the four corners of the affidavit. Your Honor, like I said, it's not the best drafted affidavit, and I was the trial counsel in this case. We saw these affidavits. We moved forward with the case, and we did an investigation. It was based on that consent, which we moved forward with our federal investigation. Can we get to that? Unless you want to talk about the, on the consent point, do we have anything in the record that shows what the source of the tip, I guess, or the request from the Puerto Rican authorities to the federal authorities about the child pornography was? In other words, do we know whether it came from the search that followed the first affidavit, or whether it came from the search that followed the second affidavit in the record? I don't believe that there's anything in the record. Even as trial counsel, I couldn't tell you exactly when it was that we were informed. I can tell you, though, that when we were initially informed, we subsequently created a taint team to move forward with the investigation. So anybody who had knowledge of information that was received from the state authorities was then excised from the case, and the case moved forward with the one of whom mentioned in the briefs was Lillian Agudelo. So that's interesting. So there was a concern about taint, but the decision to go to the wife, I guess it was, who gave consent. Yes. From the record, it appears, and I just want to know if I'm wrong, the sole reason for that was the tip from the Puerto Rican authorities, and the sole reason for the tip, according to the record as I understand it, was the fruits that they got from these searches. Is that right? I don't have anything that I can cite to in the record which would dispute that. Okay. So your position is, if we assume that the evidence that led them to tip off the federal government, which then led the federal government to go to the wife, was the product of a bad search, just assuming that, you still think the government wins? Absolutely. And why would that be when the only reason that they're going to the wife to ask for her consent is on the basis of a, you know, by hypothesis, poisoned fruit, to use the legal language. There are two answers. There's two reasons in answering your question. The first is that the consent that was obtained from the wife came two months later. When you're determining whether the consent was valid, you look at two things which are cited in Matlock. You look at whether the consent was voluntary, and whether the individual, the wife in this case, was a person duly authorized to provide that authority. In this particular case, I respectfully submit that I don't think that there's any debate from the appellant that there was voluntary consent. In this particular case, the question is whether she was a person authorized to consent. That's not my question. That would be if we had just a pure consent case. My question is, why isn't there a fruit of the poisonous tree problem with the fact that the only reason the federal government is talking to this woman and asking for consent is evidence that was gleaned from, by hypothesis, an unlawful search? Because I think that the consent that was obtained in this case was sufficiently attenuated from the intent. And what's the attenuation from it? I thought we just went through that the record suggests the only reason the federal government is approaching this woman is because they had been told by authorities who had used a bad search that there is pornographic child pornography on his computer. If that's the only reason, what's the attenuation? There's no other investigation that occurred, no other facts that might have occurred, so I don't get what the attenuation argument is. Because I then think that this comes down to a pure consent. I don't think that the So just to be clear, that would suggest two minutes later, phone call from the Puerto Rican authorities to the federal government. Go check his computer. It's got child pornography. Federal government immediately calls the wife. Can we search? She says yes. You'd say that's fine. Attenuation's got nothing to do with it on your argument. As long as she consents, it's fine. Well, when you look at the cases that are cited by the appellant, Camacho and Wansung, those are all cases in which the consent was when the illegal either arrest warrant or search warrant affected the target, the defendant. And then moments later, the consent was obtained by that particular defendant. In this particular case, we have two months passing. We have a third party who was granting the consent. And that's why I'm submitting to you that there's sufficient attenuation. I haven't found a case, none was cited by the appellant, where it shows similar fact scenario where there is the same type of attenuation. Counsel, doesn't your inevitable discovery argument suffer from some of the same problems as your consent argument? I mean, the discovery of what's on that computer only became inevitable on the basis of gaining access to the apartment through the warrant on the basis of an affidavit that arguably doesn't support probable cause. There's no – I don't know how you can separate the discovery from the prior warrant secured on the basis of probable cause, if that probable cause is not good. Doesn't that defeat any inevitable discovery argument, if we do not agree with you about probable cause? The inevitable discovery is interesting because in reading the PSR, and I agree that the PSR came much later in time, in the victim impact statement, the victim herself said that once the minor, PCM, came forward with the allegations, that she would have naturally come forward with the facts in this particular case, and if that's the case, then we certainly would have discovered the information. But we're sort of jumping over a very important point, and that is the Leon good faith doctrine. I think that the good faith doctrine saves the perhaps otherwise invalid search warrant such that our reliance… It saves the first warrant. It saves the first warrant, which is where the desktop came from. But we don't know that that's what led them to the child pornography. It could have come from the second search. No? Well, we do know that there was child pornography found on the desktop, as well as some information… But do we know whether that was a part of the first search or the second search? Yes. So there's no way that the reason they went to the woman for the request of consent came from the second search, based on the second affidavit? I thought you had told me earlier that it was unclear from the record what led them to the woman. It's unclear. I'm just telling you that the desktop was seized, as far as I understand, in the first search, and based on the first search warrant. But either way, it's good faith, which applies to both the first and the second search warrants. The second search warrant, do you think there would be a Leon exception to the second where he just says, there's some important information I'd like to see? What wouldn't be good faith then? Well, Your Honor, when we're looking at Leon, if we're going to talk about the good faith, and I know I'm way over my time, but if we're talking about the good faith, we're talking about any evidence that the officers were dishonest or reckless in preparing their affidavit. There's nothing that is inherently dishonest by the way the affidavits are drafted, such that it would invalidate an agent later on from proceeding on that affidavit. It may not be the stellar affidavit, but I submit to you that there isn't evidence of any lying or reckless, dishonest behavior on the part of the agents. And if that's the case, that good faith doctrine takes us comfortably through any consent that was later obtained by the wife. So if there are no further questions, I'm over my time. I thank you. Thank you very much. The good faith exception does not apply. Leon itself is very clear, and Judge Celia in the Ricardelli case in 1993 states that when the officer has essential information and he leaves that information out from the affidavit, that is reckless. That is reckless. And in this case, agent Ramos Ortiz was reckless twice because he submitted the identical same affidavit. The second time he files an affidavit and he doesn't even reference that as a result of the first search, we found something, that there was any connection whatsoever. Regarding Judge Lippest, that inference cannot be made because it didn't say anywhere in the affidavit that that pornographic material, assuming that it was pornographic, was used by a pellant to entice the minor. There is simply no basis for reaching that conclusion. And the cases state that when that information is not there, the Leon exception cannot apply. It's one of the specific exceptions to that rule. When the affidavit is verbose or so lacking in the issue of probable cause, reliance on that affidavit is unreasonable. Agent Ramos Ortiz was reckless and it was objectively unreasonable for him to leave out information that presumably he had, and he did it twice. When he went back to the same issuing judge, he didn't provide any additional details. He just said, as Judge Barron pointed out, there was some important evidence that we forgot. Do you have any case that addresses this point about attenuation in the context of a subsequent consent where the police are led to the person who gives the consent in consequence of an unlawful search? The answer is no. But this is a textbook definition of fruit of the poisonous tree. And I will point you to page 7 of the government's brief where they specifically concede the fact that the only source, the only source for the federal intervention was the search conducted by the Puerto Rico authorities. They were not monitoring appellant. And that's why the consent issue is really irrelevant. The motion to suppress was not denied on the basis of consent. Judge Hill P., if you read his order, as a matter of law, is incorrect. It's contrary to Grunet. It's contrary to all the cases that say the fact that you don't have enough information to reach the conclusion that there is probable cause, that doesn't do away with probable cause. It does. Judge Hill P.'s order is incorrect as a matter of law. And that is the determination that this court, with the affidavits and the case law, the relevant case law, can clearly decide, can easily decide that he just applied an incorrect standard. It's an incorrect standard because all the cases emphasize the importance that that determination is something that the judge has to make. And the cases are very clear. Whether or not the material is obscene, whether or not the material is pornographic, is for the judge to decide, not the agent filing the affidavit. He was the one who was conducting an investigation. But it's not uncommon for law enforcement agents to lie in an affidavit they filed. That's why they have to go to a judge. And the judge has to be satisfied that there is probable cause in order to issue the warrant. Otherwise, warrants will be issued as a matter of course. It's just a matter of filing a paper and you get your warrant. And especially, it is especially troublesome that for a Puerto Rico state agent to file such an affidavit when the Supreme Court of Puerto Rico has ruled repeatedly that for obscenity purposes, which is not as difficult or as harsh as child pornography, the issuing judge has to make his own determination under the Miller test that the material is in fact obscene, not merely sexual in nature. That's the law in Puerto Rico. That has been the law in Puerto Rico for the longest time. That's something that is taught to police officers in the academy. And that is something that the fact that that information was excluded from the affidavit is highly suspicious. The reason why they had to go to the wife, to the estranged wife of a penitent was because they knew there was no probable cause. They knew it. And their intervention only happened as a result of that illegal intervention. Thank you, counsel. Thank you.